## UNITED STATES DISTRICT COURT
*for the*
## NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Susan Branham, | ) | |
| Phillip Tousignant, | ) | |
| Vera Viera, and | ) | |
| Paul Ruff, | ) | |
| | ) | |
| *Individually, and on behalf of all* | ) | CASE NO: 8:10-cv-111 |
| *other similarly situated individuals,* | ) | (LEK/DRH) |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Richard F. Daines, as *Commissioner,* | ) | |
| New York State, Department of Health, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

<u>PRELIMINARY STATEMENT</u>

1.  Plaintiffs bring this class action pursuant to 42 U.S.C. § 1983 to challenge the policy

    and practice of the New York State Department of Health (DOH) in directing 18 to 20

    Service Provider Agencies (Providers) within the State to transition their Medicaid

    Traumatic Brain Injury Waiver (Waiver) participants to other service provider

    agencies without adequate notice, and without such safeguards as may be necessary to

    assure that such care and services will be provided in a manner consistent with the

    best interests of the participants, all in violation of the State's responsibilities under

    the United States Constitution, and the federal Medicaid Act, 42 U.S.C. § 1396a, *et.*

\l

*seq,* and its implementing regulations.

2.   Defendant's mandated transfer policy is placing a substantial, but as yet unknown number of Waiver participants, including one or more of the named plaintiffs, under the threat of being institutionalized due to no other service provider being readily available to take over such services as of midnight, January 31st, 2010.  In addition to violating the federal statute governing the administration of Medicaid services, defendant will violate these particpants' rights to receive services in the least restrict environment, pursuant to Olmstead v. L. C. by Zimring, 527 U.S. 581 (U.S. 1999).

3.   Plaintiffs, and the other Waiver participants who they represent across the state, are adults living in the community who have been diagnosed with having a traumatic brain injury (TBI), and who are only eligible for services under the Waiver because they would otherwise need to reside in an institution to receive the care they need.

4.   For all plaintiffs involved in the forced transfer of services by defendant, the abrupt transition of provider services without adequate planning and warning to the Waiver participants has the potential, indeed, the likelihood, of creating a vast number of negative consequences for them over a substantial period of time into the future due to their difficulty in coping as individuals with TBI and the resultant disruption in their lives.

5.   At this point, it appears there are at a minimum 150 Waiver participants affected by the DOH transition policy.  However, there is every reason to believe that the actual number of individuals involved is substantially higher.

6.   Plaintiffs seek injunctive relief against the defendant, including a temporary restraining order preventing further transition of Waiver participants until the matter

2

can be addressed by the Court.

JURISDICTION & VENUE

7.   This court has jurisdiction over the claims for violations of federal laws and regulations pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims for relief under federal law arise under 42 U.S.C. § 1983, as defendants acted under color of state law to deprive him of his federal rights. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202.

8.   Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) because the defendant resides in this judicial district.

PARTIES

9.   Plaintiff, Susan Branham resides in Clinton County, New York, and is presently receiving over 168 hours of services each week through the TBI Waiver program from Residential Resources of the Empire State, Inc., hereinafter Residential Resources, including Home and Community Support Services, so that she can live as independently as possible in the community.

10.  Plaintiff Phillip Tousignant resides in Clinton County, New York, and is presently receiving 24 hours of supportive Waiver services seven days per week through Residential Resources, including Home and Community Support Services,so that he can live as independently as possible in the community. Mr. Tousignant has been a participant in the Waiver program for five years, receiving services through Residential Resources for that period of time.

11.  Plaintiff Vera Viera resides in Clinton County, New York, and is presently receiving

3

24 hours of supportive Waiver services seven days per week through Residential Resources, including Home and Community Support Services, so that she can live as independently as possible in the community.

12.   Plaintiff Paul Ruff resides in Otsego County, New York, and is presently receiving an unspecified number of Home and Community Support Services through the Waiver, so that he can live as independently as possible in the community.  Mr. Ruff has been a Waiver participant for approximately one and a half years.

13.   Defendant, Richard F. Daines, Commissioner of the New York State Department of Health, is sued in his official capacity.  Commissioner Daines has overall responsibility for administration of the Medicaid TBI Waiver program in New York State.  The Agency maintains administrative offices for the administration of Medicaid at the Corning Tower Building, Albany, New York 12237.

CLASS ALLEGATIONS

14.   Plaintiffs Susan Branham, Phillip Tousignant, Vera Viera, and Paul Ruff bring this action on their own behalf and as a proposed class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure (FRCP).

15.   The proposed plaintiff class consists of all Waiver participants receiving services under the TBI Waiver as of December 31, 2009, and who face mandated transition by defendant by January 31, 2010, to an "approved" provider agency as listed by DOH.

16.   Upon information and belief, the proposed class is so numerous that joinder of all members is impracticable.  As indicated above, it is believed that, at a very minimum, 150 members are involved.

4

17. There are questions of law or fact common to the proposed class. While the consequences to each member may vary as to degree of harm, every member is subject to the abrupt transition of services mandated by defendant.

18. The claims or defenses of the representative parties are typical of the claims or defenses of the proposed class. All members, including representative plaintiffs, are individuals with TBI receiving services under the Waiver, all subject to the transition mandate of defendant.

19. The representative parties will fairly and adequately protect the interests of the class. Plaintiffs are represented by Legal Services of Central New York, Inc., which is experienced in class action litigation and litigation on behalf of individuals with disabilities.

20. Defendant has acted on grounds generally applicable to the proposed class by violating their constitutional and statutory rights to adequate notice and appropriate care and treatment.

21. In addition, prosecuting separate actions by individual members of the proposed class would create the risk that adjudications with respect to individual class members would, as a practical matter, be dispositive of the other members not party to the individual adjudications or would substantially impair or impede their ability to protect their interests. This is particularly so, as here, where the looming harm to proposed members is already underway and the final blow of the transition deadline can be measured in mere hours.

STATUTORY AND REGULATORY BACKGROUND

5

22.    Medicaid is a program established under Title XIX of the Social Security Act, 42

U.S.C. § 1396 *et seq.*, to provide medical assistance, funded by federal and state

governments, to individuals whose income and resources are insufficient to meet the

costs of medical care, and are either aged 65 or over, blind, disabled, or members of

families with dependent children.  42 U.S.C. § 1396 and 42 U.S.C. § 430 *et seq.*  This

assistance is intended to assist eligible individuals to attain or retain capability for

independence or self-care.  42 U.S.C. § 1396.

23.    The Medicaid program is administered by a single state agency pursuant to a state

plan which must be approved by the United States Department of Health and Human

Services (USHHS).  42 U.S.C. § 1396a(a)(5) and 42 C.F.R. § 431.10.

24.    DOH has administered the Home and Community Based Services Medicaid Waiver

for Individuals with Traumatic Brain Injury since April 1995.

25.    The Waiver uses Medicaid funding to provide supports and services to assist

individuals with TBI toward successful inclusion in the community.

26.    Waiver participants may choose to move into the community from a nursing facility.

Others may choose to participate in the waiver to prevent unnecessary

institutionalization.

27.    The philosophy of the waiver supports the participant's right to choose where to live,

who to live and socialize with, and what goals and activities to pursue.

28.    Waiver services are provided based on the participant's unique strengths, needs,

choices and goals.  The individual is the primary decision-maker and works in

cooperation with providers to develop a plan for services.  This process leads to

personal empowerment, increased independence, greater community inclusion, self-reliance and meaningful and productive activities.

29.    In addition to other Medicaid eligibility criteria, the individual applying for waiver services must be assessed by DOH to need a nursing home level of care as a direct result of the traumatic brain injury.

30.    The waiver participant, together with the a Service Coordinator chosen by the participant, create a plan for services.  This plan must describe why the individual is at risk for nursing home placement without the services of the waiver, and indicate how the available supports and requested services identified in the plan will support the health and welfare of the participant in the waiver.

31.    In addition, the participant must submit for approval a Plan for Protective Oversight to address health and welfare concerns.

32.    Significantly, the individual is not deemed eligible for waiver participant if he or she is not capable of living in the community with services and/or supports available through the waiver program.

33.    Section 1915(c) of the Social Security Act provides the U.S. Secretary of Heath and Human Services the authority to waive Medicaid provisions in order to allow long-term care services to be delivered in community settings. This waiver program is the Medicaid alternative to providing comprehensive long-term services in institutional settings.

34.    Medicaid TBI Waiver Services include the following:

    a.    Service Coordination;

    b.    Independent Living Skills Training and Development Services (ILST);

    c.  Structured Day Program Services;

    d.  Substance Abuse Program Services;

    e.  Positive Behavioral Interventions and Support Services (PBIS);

    f.  Community Integration Counseling Service (CIC);

    g.  Home and Community Support Services (HCSS);

    h.  Respite Care Services;

    i.  Environmental Modifications Service (E-mods);

    j.  Assistive Technology Services;

    k.  Waiver Transportation;

    l.  Community Transitional Services (CTS);

    m.  There is also a separate housing rental subsidy available to participants.

35.    Waiver services are provided by Provider Agencies approved to provide services under both the state's Medicaid Plan, as well as the through the waiver program itself.

36.    Prior to DOH approval as a provider agency under the wavier, DOH reviews and verifies that the provider meets the licensure, certification and staff qualifications which support the services requested.

37.    The waiver program as part of Medicaid services by the state is a part of the states's Medicaid Plan.

38.    Defendants must furnish Medicaid services with reasonable promptness.  42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930.

39.    Defendants must ensure that Medicaid services are sufficient in amount, duration, and scope to reasonably achieve their purpose.  42 C.F.R. § 440.230(b).

40.    Defendants must ensure that Medicaid services are provided in a manner consistent

with the best interests of Medicaid recipients.  42 U.S.C. § 1396a(a)(19).

41.    Defendants must ensure that Medicaid services be administered in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. § 35.130(d) and 28 C.F.R. § 41.51(d).

STATEMENT OF FACTS

**On the Issue of Mandated Transition and Provider Licensure.**

42.    On information and belief, in 2007 the Centers for Medicare and Medicaid Services (CMS) approved an amendment to the TBI Medicaid Waiver to require the providers to be licensed by DOH as a Home Care Services Agency (LHCSA), as specified in Article 36 of Public Health Law, in order to provide services involving Home and Community Support Services (HCSS) to waiver participants.

43.    On April 29, 2009, DOH sent a letter out to TBI Waiver Service Providers advising them of the 2007 amendment to the Waiver by CMS and that service providers who did not have a license to provider HCSS are not eligible to do so, but would be limited to providing "supervision/cuing and/or safety monitoring tasks in accordance with the service plan."

44.    DOH also advised the service provider agencies at that time that the 2007 CMS amendment provided that DOH must have assurances from the providers that HCSS staff providing such care have completed a New York State DOH approved Personal Care Aide (PCA) or Home Health Aide training program prior to the provision of HCSS.

45.    DOH further stated in the April 2009 letter that those Waiver participants requiring assistance with personal care services, and who were then being served by an provider

9

agency whose license to become a LHCSA was *pending* at DOH awaiting approval, would be referred to local Departments of Social Services (LDSS) for such care by the participant's service coordinator with the understanding that once the license was approved, arrangements would be made for HCSS services to resumed by the participant's provider agency.

46.     On October 1, 2009, a General Information System (GIS) bulletin was sent by DOH to Local District Commissioners, Medicaid Directors, concerning "Timeframes for Transition to Licensed Home Care Services Agency (LHCSA) licensure requirements for the Traumatic Brain Injury Medicaid Waiver providers of Home and Community Support Services," advising that the "implementation" of CMS amendments referred to in the letter of April 2009, would be delayed until December 31, 2009, and that "all requirements of the previously approved and disseminated amendment will be effective on December 31, 2009."

47.     The October 2009 GIS also specified that all HCSS providers under the waiver seeking licensure as a LHCSA would be expected to meet program requirements at a specified time, and that those agencies "not actively engaged in obtaining LCHSA licensure" would need to transition all participants receiving HCSS services by December 31, 2009.

48.     On information and belief, telephone calls, some as late as 4 p.m., were made on December 31, 2009, by DOH to 18 to 20 agencies providing services under the waiver to inform them that all waiver participants receiving HCSS services through their agency must be transferred to another DOH HCSS approved provider agency.

49.     On information and belief, many, if not all, of these agencies had already been

10

providing such services under the waiver for years and had been approved by DOH to do so.

50.     Five of the 18 to 20 service provider agencies have been identified to date:

   a.  Residential Resources, Inc., providing waiver services since 1999, in December 2009 had 45 participants in fourteen counties within New York state;

   b.  Ability Beyond Disability, providing waiver services for over 15 years out of Westchester County, with 22 participants facing transition as of the end of December, 2009;

   c.  Center for Family Support, providing waiver services for 14 years out of Rockland County and New York City, with 125 participants facing transition;

   d.  Cortland Community Reentry Program, providing waiver services out of Cortland County, not clear how many participants involved.

   e.  Transitional Rehabilitation Center, Helen Hayes Hospital, serving an unknown number of waiver participants.

51.     On information and belief, after receiving the October 2009 GIS extending the implementation of the 2007 CMS amendment to December 31, 2009, many of these agencies contacted DOH to obtain assurances that they were excluded from the transition mandate, as all had active applications pending for HCSS licensure with DOH.

52.     On information and belief, the identified agencies believed they were in compliance with the application process, actively engaged, and therefore not covered by the transition mandate.

53.     At least three of the identified agencies were advised by DOH that the transition

mandate would not apply to them, since their applications were in the pending status.

54.     On information and belief, due to apparent confusion by service providers in their perceived change of position by DOH, and communication problems between the service providers and DOH, it was as late as the third week in January that some providers began transitioning their waiver participants.

**On the Issue of Mandated Transition and Impact on Waiver Participants.**

55.     Waiver participants across the state are being transitioned, or still face transition issues, as of the day and hour of this complaint.

56.     On information and belief, a significant number of waiver participants still do not know if they will continue to receive services after midnight, January 31st, and, if so, where these services might be coming from, nor whom their new service staff will be.

57.     It is expected that due to lack of available service providers to absorb the transitioning waiver participants, some may be forced into institutions.

58.     On information and belief, plaintiffs Branham, Tousignant, and Viera, all face the prospect of a "social admission" to their local hospitals, pending the provision of Medicaid waiver services from some source.

59.     Depending on the length of institutionalization for waiver participants that fall into this category, they are at risk of losing their housing, most of which is subsidized through the waiver, as well as loss of waiver services generally.

60.     Even for those waiver participants who are expected to transfer relatively "smoothly" to another provider agency, there will be unavoidable harm to those participants due to the abrupt nature of the transition, loss of familiar care givers, loss of routine, stress, anxiety, emotional outbursts, set backs in addiction control with corresponding

12

negative consequences, and emotional reactivity that could result in self harm to the participant or harm to others.

CLAIM FOR RELIEF

61. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 to 60 with the same force and effect as if set forth more fully herein.

62. Defendant's administration of DOH policies and practices for the provision of Medicaid TBI Waiver Services, and the mandated transition of waiver participants from current service providers to another service provider from the list of now approved service agencies, violates the federal Medicaid law requiring that the State Plan for Medical Assistance be provided in a reasonably prompt, timely and expeditious manner, 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930.

63. Defendant's administration of DOH policies and practices for the provision of Medicaid TBI Waiver Services, and the mandated transition of waiver participants from current service providers to another service provider from the list of now approved service agencies, violates the federal Medicaid law requiring that the State Plan for Medical Assistance ensure that Medicaid services are sufficient in amount, duration, and scope to reasonably achieve their purpose. 42 C.F.R. § 440.230(b).

64. Defendant's administration of DOH policies and practices for the provision of Medicaid TBI Waiver Services, and the mandated transition of waiver participants from current service providers to another service provider from the list of now approved service agencies, violates the federal Medicaid law requiring that the State Plan for Medical Assistance ensure that Medicaid services are provided in a manner consistent with the best interests of Medicaid recipients. 42 U.S.C. § 1396a(a)(19).

65.     Defendant's administration of DOH policies and practices for the provision of

Medicaid TBI Waiver Services, and the mandated transition of waiver participants

from current service providers to another service provider from the list of now

approved service agencies, violates the federal Medicaid law requiring that the State

Plan for Medical Assistance ensure that Medicaid services be administered in the

most integrated setting appropriate to the needs of qualified individuals with

disabilities.  28 C.F.R. § 35.130(d) and 28 C.F.R. § 41.51(d).

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated, respectfully

requests that this Court:

(a) Assume jurisdiction over this matter;

(b) Grant a temporary restraining order against defendant preventing further transition of

Waiver participants so that continuity of care and irreparable harm to proposed class

members can be avoided until such time as the matter can be addressed by the Court.

(c) Certify this action as a class action, and certify a proposed class consisting of all waiver

participants receiving services through the Medicaid TBI Waiver on December 31, 2009,

who have been mandated to transition to another service provider agency, where their

current service provider agency was, as of December 31, 2009, an agency with an

application for licensure as a LHCSA pending with DOH;

(d) Enter injunctive relief against the defendant, requiring DOH to approve or disapprove

applications by service provider agencies that were pending as of December 31, 2009, for

LHCSA licenses, so that continuity of care can be preserved with such safeguards as may

14

be necessary to assure that care and services will be provided in a manner consistent with

the best interests of the participants; and

(e) Grant such other relief as this Court may deem just and appropriate.

Dated:  January 29, 2010

Robert W. Lukow, *of counsel,*
Bar Number: 508181
**LEGAL SERVICES OF CENTRAL NEW YORK**
*Attorneys for Plaintiff*
472 South Salina Street, Suite 300
Syracuse, New York  13202
315- 475-3127
fax: 315-475-2706
email: rlukow@lscny.org

15

## ATTORNEY'S VERIFICATION

**STATE OF NEW YORK)**
**COUNTY OF ONONDAGA) ss.:**

      **ROBERT W. LUKOW,** being duly sworn, deposes and says,

      That he is the Attorney of record for the Plaintiffs Susan Branham, Phillip Tousignant, Vera

Viera and Paul Ruff in the within proceeding, with offices located at 472 South Salina Street, City

of Syracuse, County of Onondaga; that he is admitted to practice in the courts of New York and the

United States District Court, Northern District, that he has read the foregoing Complaint and knows

the contents thereof; that the same are true to his knowledge, except to those matters which are stated

to be alleged on information and belief, and to those matters he believes them to be true.

      That the reason why this Verification is made by deponent instead of the Plaintiffs is because

the Plaintiffs are not within the County of Onondaga, which is the county where deponent has his

office.

                                     **Robert W. Lukow**

Sworn to before me this
29 st day of January, 2010

Notary Public

SUSAN M. YOUNG
Notary Public, State of New York
No. 02YO4922650
Qualified in Onondaga County
My Commission Expires Feb. 16, 20 10

16